IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

CHARLES WYNN,

                Plaintiff,

v.

HEATHER ADAMS,

                Defendant.

OPINION and ORDER

23-cv-364-jdp

---

This case concerns an injury to plaintiff Charles Wynn during his incarceration at Columbia Correctional Institute. Wynn brings excessive force and medical care claims under the Eighth Amendment. The case is scheduled for a final pretrial conference on October 30, 2024. This opinion addresses the parties' motions in limine.

ANALYSIS

A. Wynn's motions in limine

    1. Motion No. 1: exclude evidence of details about witnesses' criminal history

Federal Rule of Evidence 609 allows Adams to impeach Wynn and his witnesses with felony convictions that are less than 10 years old. Adams seeks to introduce the title, date, and disposition of Wynn's convictions and of the convictions for Wynn's witnesses. Dkt. 61, at 17–20; Dkt. 65, at 1–2.

Wynn has one conviction that undisputedly falls with the 10-year window in Rule 609(b). But there's a second older conviction: for possession of a firearm by a felon on August 30, 2012. Wynn's probation on this conviction was revoked on September 24, 2014, and he served an 18-month sentence, which was not completed more than 10 years ago.

Whether the revocation sentence brings this conviction into the 10-year window is an open question in this circuit. *United States v. Rogers*, 542 F.3d 197, 201 (7th Cir. 2008). Given that the court will sharply limit the information allowed about prior convictions, the court discerns no prejudice in treating this conviction as one less than 10 years old.

Adams seeks to introduce the title, date, and disposition (which is to say the sentences imposed) for all the prior convictions. Wynn contends that this would be unfairly prejudicial. Dkt. 64, at 9.

Adams argues that the Seventh Circuit has unequivocally endorsed disclosing the title, date, and disposition of prior convictions, relying on the "thorough explanation of the reasoning behind the rule" in *Campbell v. Greer*, 831 F.2d 700 (7th Cir.1987). Dkt. 61, at 18. Counsel quotes *Campbell* at great length. *Id.*, at 19–20. But *Campbell* addressed an obsolete version of Rule 609. *Kunz v. DeFelice*, 538 F.3d 667, 675 (7th Cir. 2008), as corrected (Aug. 27, 2008). The current version of Rule 609 expressly incorporates a consideration of prejudice under Rule 403. In *Campbell*, Judge Posner had concluded that the consideration of prejudice was expressly excluded. *Campbell* does not provide a good explanation for the current version of Rule 609.

This court's long practice has been to exclude the details of prior convictions in prisoner civil rights cases. The point of Rule 609 is to allow, but limit, attacks on a witness's character for truthfulness. In a prisoner civil rights case, the jury will know that the plaintiff is serving a criminal sentence. The nature of the crime of conviction, or the sentence received, doesn't say anything more about a witness's character for truthfulness—unless it is a crime of dishonesty, which is separately addressed in Rule 609(a)(2). But adding the details of a non-dishonesty conviction, including the name of the crime and the sentence received, impugns the general

2

character of the witness, making him seem dangerous, unlawful, or unsavory in the eyes of the jury. Adams offers no other reason to introduce any details of the prior convictions in this case.

The court will allow Adams to ask Wynn and the other witnesses whether they have been convicted of felonies and how many times. No other details are allowed.

2. **Motion No. 2: exclude evidence of Wynn's prior sexual harassment of correctional officers, including incidents in which he self-harmed or faked injury**

Wynn has an extensive history of sexually harassing female staff during his incarceration. Wynn has received conduct reports for attempting to ejaculate on female officers or nurses, exposing himself to female officers and nurses, faking medical issues to sexually harass female officers and nurses, and threatening to sexually assault female officers and nurses. Dkt. 61, at 10–17 (Exhibits A through E). Wynn contends that it would be unfairly prejudicial for the jury to hear details about this prior misconduct and asks the court to limit Adams's cross-examination about these incidents to general references that they occurred. Wynn also requests that any testimony about Wynn's prior misconduct be limited to incidents that Adams was personally aware of when the incident at issue in this case occurred.

Evidence of Wynn's prior sexual misconduct and faked injuries is relevant if it informed Adams's decisions during the incident at issue in this case. The court will permit Adams to testify about her prior interactions with Wynn and to testify about her knowledge of Wynn's conduct that affected her state of mind when interacting with him, including that she was generally aware that Wynn would sexually harass women and that in the past he had self-harmed or faked injury to lure female staff to his cell.

The details of Wynn's prior misconduct that Adams did not know about when the incident occurred are not relevant to Adams's state of mind or the reasonableness of her use of

3

force. The court will exclude evidence of specific incidents of Wynn's sexual misconduct, faked injuries, or self-harm about which Adams was not aware during the incident at issue in this case. The court will also exclude testimony from Adams about specific incidents that she heard about from other officers but did not personally witness.

### 3. Motion No. 3: preclude references to a damages award being paid by taxpayer money

The motion is granted as unopposed. The parties should not discuss that a damages award in this case would be paid with taxpayer money.

### 4. Motion No. 4: preclude character evidence, evidence of wrongdoing, or other acts without leave from the court

Wynn requests that the court preclude Adams from offering evidence governed by Rule 404 without a prior ruling from the court allowing such evidence. Propensity evidence is not admissible. But pre-clearance is required only in criminal cases.

The court has already ruled that Adams may introduce evidence of Wynn's history of harassment of female officers insofar as it informed her actions in closing the trap. The court will further limit this evidence as explained in the context of Adams's motions in limine.

The court expects that any additional prior acts evidence within the scope of Rule 404 will be excluded.

### 5. Motion No. 5: exclude expert testimony from Marirose Howell and Ryan Blount

Adams did not disclose any retained experts in this case, Dkt. 17, and the court previously granted Wynn's motion to exclude untimely expert opinions from nurse Jodi Fields, who works for the Department of Corrections, Dkt. 51. Wynn now moves to exclude testimony

from the nurse who initially treated Wynn's injury, Marirose Howell, and from a security director at Columbia Correctional Institution, Ryan Blount.

As for Howell, the court will grant Wynn's motion to exclude any expert testimony from Howell. Howell's declaration, Dkt. 47, attaches her nursing notes from Wynn's treatment for the cut on his penis and provides basic information about her evaluation of Wynn. Howell's declaration explains that shortly after the injury she told investigators that Wynn's injury was consistent with being shut in a trap door. That testimony, up through paragraph 20, is admissible. But Howell goes on to explain that she was recently asked to review his subsequent medical records; she no longer thinks that Wynn's injury is consistent with being shut in a trap door and instead believes that Wynn's injury was self-inflicted.

Howell's testimony in paragraphs 21 through 38, is like the testimony from Fields that the court excluded as untimely expert testimony. Paragraphs 21 through 38 of her declaration are devoted to explaining why his records from subsequent treatment, which Howell was not involved in, support her current opinion that his injury was self-inflicted. These opinions are expert analysis provided for this litigation rather than opinions that she formed while treating Wynn. Wynn's own reliance on Howell's earlier statements does not excuse Adams's failure to timely disclose Howell as an expert.

As for Blount, the court will exclude the testimony in paragraph 24 of Blount's declaration, Dkt. 42. The motion is otherwise denied. Most of Blount's declaration concerns information about Department of Corrections policies and operations at Columbia Correctional Institution based on his experience working there. Dkt. 42. Testimony about these topics is not within the scope of Rule 702. But paragraph 24 purports to explain how closing a trap door with the foot may be justified in extenuating circumstances. This is not a

5

statement of existing policy. It is an inadmissible opinion endorsing Adams's actions, based on purported expertise developed in his experience with the Department of Corrections.

6. **Motion No. 6: exclude statements from Lieutenant Nathan Fosshage**

Lieutenant Nathan Fosshage was the corrections officer who took Wynn out of his cell to get medical treatment following Wynn's interactions with Adams. As part of the investigation into Wynn's initial complaint about the incident, Fosshage's unsworn statement about the incident was recorded. Sadly, Fosshage has since died. Wynn moves to exclude the statement as hearsay. Adams seeks to introduce it under Rules 804(b)(1) and 807.

Both parties seem to consider Fosshage's statement as former testimony under Rule 804(b)(1)(A). But the statement was not "given as a witness at a trial, hearing, or lawful deposition." Even if it were, its undisputed that Wynn did not have "an opportunity and similar motive" to develop Fosshage's testimony, which is required for former testimony to be admissible under Rule 804(b)(1)(B).

As for Rule 807, the residual hearsay exception is satisfied if:

> (1) the statement is supported by sufficient guarantees of trustworthiness—after considering the totality of circumstances under which it was made and evidence, if any, corroborating the statement; and
>
> (2) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts.

In determining whether evidence is sufficiently trustworthy, the court of appeals considers several factors, including the following: the character of the witness for truthfulness and honesty; whether the testimony was given voluntarily, under oath, subject to cross-examination and a penalty for perjury; the witness's relationship to the parties; the extent to which the witness's testimony reflects his personal knowledge; whether the witness ever recanted his

testimony; and the existence of corroborating evidence. *United States v. Moore*, 824 F.3d 620, 622–23 (7th Cir. 2016).

Adams does not address any of these factors. In her opposition to Wynn's motion, Adams asserts that Fosshage's statement "has the indicia of reliability, trustworthiness, probative value, and notice." Dkt. 65, at 12. But this conclusory assertion does not explain what features of the statement give it indicia of reliability or trustworthiness. And Adams does not explain what Fosshage's statement contains or what issue in the case she would offer it for, so the court cannot assess if it is more probative on the point for which it is offered than any other evidence Adams could obtain. The court will exclude the statement as inadmissible hearsay.

### 7. Motion No. 7: exclude evidence that Wynn was diagnosed with an STD in 2023

The court will grant the motion.

Adams did not know whether Wynn had a sexually transmitted disease when the events at issue occurred in December 2021, and there is no evidence that Wynn had a sexually transmitted disease in December 2021. Neither side may introduce any evidence about whether Wynn had or has a sexually transmitted disease.

To be clear: this ruling does not preclude Adams from offering testimony that the *risk* of disease transmission was one of the reasons to keep the trap closed.

### 8. Motion No. 8: introduce evidence that Wynn was diagnosed with exhibitionistic disorder

Wynn contends that a Department of Corrections psychologist diagnosed him with exhibitionistic disorder and that he was receiving treatment for the disorder. Wynn contends

that this is relevant to punitive damages, because it affects the reprehensibility of Adams's actions.

The court will not allow Wynn to offer testimony that he suffered from or was diagnosed with exhibitionistic disorder for several reasons. First, there is no evidence that Adams knew about the diagnosis. A diagnosis that Adams knew nothing about cannot have affected her decision about using force on Wynn or providing him with medical care. Second, Wynn has not disclosed an expert to explain what the diagnosis means or how it affects his conduct. Without this explanation, the jury would not know how the diagnosis affects Wynn's own culpability. Third, whether his conduct was the result of a mental illness or simply a willful desire to harass female officers makes no difference to the justification for Adams's response to it.

9. **Motion No. 9: order DOC to allow Wynn to be dressed in normal clothing and restrained with non-visible methods during trial**

The motion is granted as unopposed. When Wynn appears at trial, he may appear in clothes that his counsel will provide to the U.S. Marshall and be restrained with non-visible means. Counsel must provide the clothing to the court at least a day before the trial.

10. **Motion No. 10: introduce evidence that Adams resigned because of the events at issue in this case**

Adams resigned in lieu of being fired after the incident. Wynn contends that her resignation is relevant to Adams's credibility and bias. Wynn argues that Adams will have a motive to "fabricate her testimony at trial" because she is currently working to receive certification as an EMT, and it would be difficult for her to get a new job as an EMT if she is found liable in this lawsuit. Wynn also argues that Adams is biased against two of the

correctional officers who will be testifying for Wynn because they were involved in the investigation that led to her termination.

Adams does not oppose Adams's request to introduce evidence that she resigned in lieu of termination, "provided that all relevant evidence related to the employment investigation is allowed to be introduced pursuant to Fed. R. Evid. 106." Dkt. 65. Rule 106 sometimes requires the introduction of a complete statement. It doesn't go as far as Adams suggest, requiring the introduction of all evidence on a topic. Adams also asks the court to prohibit any argument that Adams had a motive to lie to avoid termination. But a party's bias and self-interest are always fair game for argument.

It's not clear to the court what evidence concerning the investigation into Adams's conduct will be relevant to this case. Accordingly, the court will reserve ruling on this motion so that the parties can explain the issues at the pretrial conference.

B.  Adams's motions in limine

1.  **Motion No. 1: exclude reference to details of other lawsuits against DOC or its employees**

The motion is granted as unopposed.

2.  **Motion No. 2: exclude reference to other legal proceedings or inmate grievances against Adams except those related to this case or Adams's personnel file work history**

The motion is granted as unopposed. The parties may not introduce evidence about legal proceedings or inmate grievances against Adams that do not relate to the incident at issue. The parties also may not introduce evidence about Adams's personnel file or work history that does not relate to the incident at issue in this case.

### 3. Motion No. 3: exclude evidence regarding permanent mental or physical injury, future care and treatment, or future pain and suffering

The motion is granted as unopposed. The parties agree that Wynn may testify about his own perception of his physical and mental health, before and after the incident, and that Wynn has not offered expert testimony that would be necessary for him to seek damages for permanent injury or future pain and suffering. Wynn may offer evidence of emotional and physical pain and suffering during the incident and during the months following the incident, but he may not introduce evidence regarding permanent mental or physical injury, future care and treatment, or future pain and suffering.

### 4. Motion No. 4: to question Wynn and other inmate witnesses on conduct reports about lying

Adams seeks to cross-examine Wynn and other witnesses about conduct reports that they received for lying between 2019 and 2023, pursuant to Rule 608(b). The parties agree that, under Rule 608(b), Adams may question Wynn and other witnesses about specific instances in which they received conduct reports for lying and that Adams may not introduce the conduct reports themselves as evidence. Dkt. 61, at 9; Dkt. 64, at 2–3.

But Wynn requests that the court limit Adams's cross-examination on the conduct reports to asking whether the witnesses have received conduct reports for lying. Wynn contends that, if a witness answers yes to that question, Adams should not be allowed to question the witnesses about the details of the conduct reports.

The court will grant Adam's motion, subject to the restrictions requested by Wynn. Adams may question witnesses about whether they have received conduct reports for lying, including the number of times that a witness has received such conduct reports. The details of

specific conduct reports are a collateral issue, so the court will not permit Adams to waste time questioning witnesses about the details of the conduct reports.

> **5. Motions Nos. 5–7: to question Wynn about conduct reports concerning sexual misconduct, about faking medical issues to sexually assault women, and about threatening to sexually assault women**

These motions raise the same general issue as Wynn's motion in limine no. 2. But given the extensive detail provided in Adams's motions, it appears that counsel intends extensive examination of Wynn about his sexual misconduct. Wynn's sexual misconduct is relevant only to the extent that it explains Adams's conduct.

Wynn is not the defendant here. The question is not whether his conduct was appropriate; clearly it was not. Extensive questioning of Wynn about his prior incidents of misconduct will only prejudice the jury against him, without getting to the real issue, which is whether Adams responded to Wynn's misconduct appropriately. The detail presented in the motions in limine far exceeds the needs of the case, and Wynn's own view of his sexual misconduct is irrelevant. Adams's motions are denied.

Adams may offer evidence about Wynn's history of sexual misconduct of which she was aware that she considered when she closed the trap.

> **6. Motion No. 8: to question Wynn about his criminal convictions**

This motion raises the same issue as Wynn's motion in limine no. 1. The court will allow counsel to ask Wynn whether he has been convicted of felonies and how many times.

ORDER

IT IS ORDERED that:

1. The court rules on plaintiff Charles Wynn's motions in limine as follows:

    a. Motion in limine no. 1, regarding details of witnesses' criminal history, is GRANTED. Adams may ask Wynn and the witnesses whether they have been convicted of felonies and how many times, but Adams may not cross-examine them about the nature of their specific convictions.

    b. Motion in limine no. 2, regarding Wynn's prior sexual harassment of correctional officers and prison staff, is GRANTED IN PART and DENEID IN PART. Adams may testify about her prior interactions with Wynn and about her knowledge of risks posed by Wynn's conduct, but she may not testify about specific details of misconduct about which she has no direct personal knowledge.

    c. Motion in limine no. 3, regarding damages being paid by taxpayer funds, is GRANTED as unopposed.

    d. Motion in limine no. 4, regarding prior ruling on unspecified character evidence, is DENIED, although propensity evidence is excluded.

    e. Motion in limine no. 5, regarding untimely expert opinions from Marirose Howell and Ryan Blount, is GRANTED IN PART and DENIED IN PART. Testimony and opinions from Howell that Wynn's injury was self-inflicted is excluded as untimely expert testimony. Testimony and opinions from Blount concerning paragraph 24 of his declaration is excluded as untimely expert testimony.

    f. Motion in limine no. 6, to exclude the recorded statement from Lieutenant Nathan Fosshage, is GRANTED.

    g. Motion in limine no. 7, to exclude evidence that Wynn was diagnosed with a sexually transmitted disease in 2023, is GRANTED.

    h. Motion in limine no. 8, to introduce evidence that Wynn was diagnosed with exhibitionistic disorder, is DENIED.

    i. Motion in limine no. 9, to allow Wynn to be dressed in street clothing with non-visible restraints during trial, is GRANTED.

    j. The court reserves a ruling on motion in limine no. 10, regarding Adams's employment investigation and resignation.

2. The court rules on defendant Heather Adams's motions in limine as follows:

   a. Motions in limine nos. 1, 2 and 3, concerning other lawsuits against the Department of Corrections, other lawsuits or grievances regarding Adams, and evidence regarding future damages, are GRANTED as unopposed.

   b. Motion in limine no. 4, regarding witnesses' conduct reports for lying, is GRANTED IN PART and DENEID IN PART. Adams may question witnesses about whether they have received conduct reports for lying but may not question witnesses about the details of specific conduct reports.

   c. Motions in limine nos. 5, 6, and 7, regarding Wynn's conduct reports for sexual misconduct, faking medical issues to sexually assault women, and threatening to sexually assault women, are DENIED.

   d. Motion in limine no. 8, concerning questioning Wynn about his criminal convictions, is DENIED IN PART. Adams may ask Wynn whether he has been convicted of felonies and how many times, but Adams may not ask about any details of specific convictions.

Entered October 28, 2024.

                            BY THE COURT:

                            /s/

                            _____
                            JAMES D. PETERSON
                            District Judge